No. 20-4462

# United States Court of Appeals for the Fourth Circuit

---

**UNITED STATES OF AMERICA,**
*Appellee,*

*v.*

**RESHOD JAMAR EVERETT,**
*Appellant.*

---

*On Appeal from the United States District Court
for the Eastern District of North Carolina*

---

## MEMORANDUM SURREPLY OF THE UNITED STATES

---

ROBERT J. HIGDON, JR.
*United States Attorney*

BY:  SCOTT A. LEMMON
JENNIFER P. MAY-PARKER
*Assistant United States Attorneys*
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone:  (919) 856-4530

*Attorneys for Appellee*

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, respectfully files this Surreply to the Defendant's Reply to the Government's Response in Opposition to the Defendant's appeal of the district court's order of detention.

## I. INTRODUCTION

The Defendant's Memorandum Reply ("Reply") makes new factual allegations and legal arguments that are not supported by the record and were not raised in the Defendant's opening brief. They should therefore be disregarded.

## II. BACKGROUND

### A. Factual and Procedural Background

For the factual and procedural history of this case, please see the Government's Response in Opposition to the Defendant's appeal of the district court's order of detention. (D.E. 13).

The Defendant filed his opening Brief on September 15, 2020. (D.E. 6). He did not file a final order form for the transcript of the district court's de novo detention hearing until the next day. (D.E. 7). The transcript was completed October 23, 2020, and the Government filed its Response on October 30, 2020. (D.E. 13).

1

On November 3, 2020, the Defendant filed his Reply. (D.E. 16). The Reply makes new factual allegations and legal arguments, many of which were not brought before the district court; others are unsupported by the record in the district court. Moreover, these factual allegations and legal arguments were not mentioned in the Defendant's opening Brief.

## IV.    ARGUMENT

The new factual allegations and legal arguments raised in the Defendant's Reply are incorrect, are not supported by the record, or are not properly before the Court, and so they should be disregarded.

**A.    The Defendant's Reply makes several factual allegations that are incorrect or are not properly before this Court.**

The Defendant's Reply makes several factual assertions that are incorrect, and many of these allegations were not raised in the Defendant's opening Brief.

First, the Defendant's Reply claims, for the first time, that the Defendant's 2018 state charges and the current federal case are based on "the exact same set of facts. Same allegations, same cooperating witnesses, almost identical discovery." (D.E. 16 at 3–4). This is flatly incorrect. As was explained in detail during the district court's de novo detention hearing, the state case arose from the search warrants that were executed at the three locations associated with the Defendant; this federal case, on the other hand, relies on significant new

2

information. For example, Task Force Officer Roger Moore testified before the district court that through the long-term federal investigation, agents developed significant evidence from three cooperating witnesses who had never provided information in the state case. See (D.E. 13 at 4–6). Those cooperating witnesses described the large scope of the Defendant's interstate drug trafficking organization, including his trafficking of more than 3,000 pounds of marijuana and 20 kilograms of cocaine; the fact that the Defendant received gross proceeds of more than $6,000,000 from drug sales; his leadership role; and his willingness to regularly carry firearms during drug deals. (D.E. 13 at 4–6). Additionally, TFO Moore testified that in the federal case, agents conducted an extensive financial investigation, including a review of the Defendant's tax returns. (D.E. 13 at 6). Based on the long-term federal investigation, the Defendant was charged in federal court with a conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana and 5 kilograms or more of cocaine, carrying a mandatory minimum of ten years' imprisonment—charges that he did not face at the state level. (D.E. 13 at 7). In short, the Defendant is incorrect when he states that the federal case contains the "[s]ame allegations [and] same cooperating witnesses" as the prior state case. The Defendant is certainly incorrect when he states that in this federal case, "the discovery is *identical* to the discovery from the state case," (D.E. 16 at 5) (emphasis added);

3

the discovery in the federal case contains cooperating witness statements and voluminous financial records that were not provided in the state's discovery.

Second, the Defendant's Reply states, for the first time, that the Defendant "went to the media and other social platforms to voice concerns and issues with the Fayetteville Police Department[,] all in hopes of being able to clear his name." This allegation—which appears to be intended to suggest that the Fayetteville Police Department behaved improperly during this investigation—was not mentioned in the Defendant's opening Brief, nor does the Defendant cite a portion of the detention hearing transcript for this proposition. (D.E. 6). The Government has not been able to find any information to support this factual allegation in the record before the Court, other than the Government's own question to TFO Moore regarding the Defendant's false beliefs that officers had been fired for their behavior during this investigation:

> Q: Now, there's also been discussions about things being brought; food items, Gatorade being brought into [the Defendant's residence] during the search warrant. Mr. Everett has indicated on social media he believes officers had been fired for that. Is that true? Has any officer[] been fired due to anything like food or Gatorade brought into the house during the execution of a search warrant?
>
> A: They have not.

See United States v. Reshod Everett, 5:20-CR-333-D-1 (D.E. 58 at 28). In short, the only testimony on this issue explained that the Defendant *falsely* believed that the Fayetteville Police Department had acted improperly during this

4

investigation. The Court should disregard this newly-raised allegation of improper behavior by officers during this investigation.

Third, the Defendant's Reply attempts to make new factual assertions to undermine the district court's interpretation of a key recorded jail. In that phone call, TFO Moore testified—and the district court agreed—the Defendant provided instructions to a member of his drug trafficking organization regarding anticipated drug shipments from "Cali" and "Colorado." Now, for the Defendant claims that California and Colorado "are places where Mr. Everett has family and had spent time. In fact, his wife is a California native and her parents are still located there." (D.E. 16 at 6). Only a portion of this information was mentioned during the detention hearing, and it was asserted by defense counsel during cross-examination of TFO Moore:

> Q: Did you know his wife was originally from California? You mentioned California and Colorado.
>
> A: No, I did not.
>
> Q: Okay. She's from California.

See United States v. Reshod Everett, 5:20-CR-333-D-1 (D.E. 58 at 25). Even assuming that this was evidence upon which the district court could rely, the Defendant provided no evidence that the Defendant's wife's parents "are still located [in California]" or that the Defendant and his family have "spent time" in those states. (D.E. 16 at 6). In contrast, TFO Moore testified that based on

5

his training and experience, as well as his knowledge of the investigation, that during the recorded call, the Defendant was instructing a member of his drug trafficking organization to obtain drug shipments from sources of supply "Cali" and "Colorado," and that the drugs would need to be fronted because law enforcement had seized the Defendant's currency. See United States v. Reshod Everett, 5:20-CR-333-D-1 (D.E. 58 at 10). The Defendant's new factual allegations were not mentioned in the Defendant's opening Brief, see (D.E. 6), and so they are not properly before the Court.

Fourth, the Defendant's Reply makes various new factual assertions regarding the Defendant's private investigator, who approached an officer involved in this investigation. For example, the Defendant now claims that when the private investigator said that this case would be "costly" for the officer, the investigator was "refer[ing] to the civil lawsuit that Mr. Everett planned on filing." (D.E. 16 at 7). But there was no evidence presented at the detention hearing to support this claim, nor was this claim mentioned in the Defendant's opening Brief. See (D.E. 6). As a result, it should be disregarded.

Fifth, the Defendant's Reply raises entirely new allegations regarding the conduct of two former members of the Fayetteville Police Department, and those allegations are both false and not properly before the Court. Specifically, the Defendant's Reply states, for the first time,

> Two of the lead Detectives heavily involved in the investigation are no longer officers with the Fayetteville Police Department. As of late 2019, neither Detective C.G. Boyd, nor Detective D. Harding worked for Fayetteville Police Department or held certification as a law enforcement officer in North Carolina. Both of these officers were heavily involved in the investigation and prosecution of Mr. Everett's case. The Arrest, all of the searches, and all of the seizures. The fact that neither of them are with the department any longer and in fact, don't even hold law enforcement certifications plays a large role in how the Court should look at any part of the case that they were involved in.

(D.E. 16 at 7). These factual allegations are not supported by the record. In fact, at no time during the detention hearing were Detective Boyd or Harding mentioned; there certainly was no mention of their status as law enforcement officers, and there was no evidence provided that they had been fired for behaving improperly in connection with this, or any other, investigation. See United States v. Reshod Everett, 5:20-CR-333-D-1 (D.E. 58). In fact, TFO Moore specifically confirmed that officers had *not* been fired by the Fayetteville Police Department for improper behavior during the search of the Defendant's residence. See id. at 28. The Court should not consider the Defendant's newly-raised, and unsupported, claims of improper behavior by officers who conducted this investigation.

**B.    The Defendant's Reply also raises new legal arguments that are not properly before the Court.**

The Defendant also made the following new arguments that were not raised before the district court or in the Defendant's opening Brief.

7

First, the Defendant argues, for the first time, that the recorded jail phone call did not contain "direct drug talk." (D.E. 16 at 6). The Defendant did not significantly cross-examine TFO Moore on this issue, nor did he argue to the district court that TFO Moore was incorrect when he testified that in this jail call, the Defendant was continuing to lead his drug trafficking organization, even while detained. See United States v. Reshod Everett, 5:20-CR-333-D-1 (D.E. 58). Moreover, although the Defendant briefly acknowledged the existence of the phone call in his opening Brief, see (D.E. 6 at 5, 8), the opening Brief did not contain any argument at all regarding the proper interpretation of the contents of the jail call, including phrases like "they got everything" and that this was a "minor setback for a major comeback." (D.E. 16 at 6). In short, the Defendant's newly-raised argument about the meaning of the recorded phone call is not properly before the Court, and it should therefore be disregarded.

Second, the Defendant also attempts to argue that the Defendant should be released due to the COVID-19 pandemic. (D.E. 16 at 8). Although this issue was briefly raised (and rejected) in the district court, the Defendant did not mention COVID-19 in his opening Brief. (D.E. 6). This issue is therefore not properly before the Court, and the Court should disregard it. If the Court does consider it, the district court did not clearly err in detaining the Defendant where there was no evidence that the Defendant has any health issue that would place

8

him at a higher risk of serious illness if he were to contract COVID-19. See United States v. Reshod Everett, 5:20-CR-333-D-1 (D.E. 58 at 50–51).

## V. CONCLUSION

The Defendant's newly-raised factual allegations and legal arguments are incorrect, are not supported by the district court record, and they were not mentioned in the Defendant's opening brief. The Court should therefore disregard them.

Even if the Court does consider these newly-raised arguments, the district court's findings of fact and legal conclusions were not clearly erroneous, as explained in the Government's Response. (D.E. 13). This court should appropriate deference to such findings and affirm the district court's order granting the Government's motion for detention.

Respectfully submitted, this 4th day of November, 2020.

                                      ROBERT J. HIGDON, JR.
                                      United States Attorney

                    BY:   /s/ Scott A. Lemmon
                                      SCOTT A. LEMMON
                                      Assistant United States Attorney
                                      Criminal Division
                                      150 Fayetteville Street, Suite 2100
                                      Raleigh, NC 27601
                                      Telephone (919) 856-4500
                                      Email: scott.lemmon@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1. Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this document meets the type-volume limits of Rules 27(d), 35(b)(2), and/or 40(b) because, exclusive of the portions of the document exempted by Rule 32(f), this document contains <u>1998</u> words.

    *(Filings are not to exceed 5,200 words for a motion or response and 2,600 words for a reply, pursuant to Rule 27(d), or 3,900 words for a petition for panel rehearing or rehearing en banc, pursuant to Rules 35(b)(2) and/or 40(b)).*

2. Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 2016 using fourteen-point *Calisto MT*, a proportional-width typeface.

/s/ Scott A. Lemmon
SCOTT A. LEMMON
*Assistant United States Attorney*
